GENOVESE, J.,
dissents and assigns the following reasons.
hThe majority opinion in this case creates uninsured motorist/underinsured motorist (UM/UIM) coverage where there is none. ;
The crux of the majority opinion is that the UM/UIM endorsement “changes” the policy. That is a truism insofar as every endorsement “changes” the policy. The *368 change in the policy as a result of the UM/UIM endorsement is that UM/UIM coverage will now be a part of the policy of insurance issued to the insured. It does not change the general insuring agreement relative to the insured’s accident or losses.
The policy of insurance in question is a “Bobtail Liability Insurance Policy,” and it specifically states, “This Insurance Policy applies to business and non-business uses of a covered automobile, but only as respects to the trailer unit whilst the tractor unit is not attached to a trailer.” It is not disputed that a trailer was attached to a tractor ,unit at the time of the accident in question.
In this case, the insuring agreement is the insurance policy, and UM/UIM coverage is the endorsement. It is akin to the adage of the dog and the tail. Here, the insurance policy is the dog, and the UM/ UIM endorsement is the tail. As stated in the proverb, the dog wags the tail; the tail does not wag the dog. There is |2nothing in the endorsement which changes, much less overrides, the clear and unambiguous language in the general insuring agreement which only affords coverage when the tractor unit is not attached to a trailer.
The Bobtail Liability Insurance Policy, under the heading “INSURING AGREEMENTS!,]” contains a provision addressing “INSURED ACCIDENTS OR LOSSES” which provides: “This Insurance Policy applies to business and non-business uses of a covered automobile, but only as respects to the tractor unit whilst the tractor unit is not attached to a trailer.” The policy also includes, as a “LIMITATION [] ON UNDERWRITERS’ LIABILITY!,]” that its “liability to the Insured, if any, shall be limited!,]” and it includes.UM/UIM coverage which “will be provided as defined in the attached endorsement form(s).” Finally, the UM/ UIM endorsement to the policy states, in pertinent part, that [w]ith respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.”
The definition of an “uninsured motor vehicle” contained within the UM/UIM endorsement does not modify or negate what constitutes a covered accident or loss from the use of “a covered automobile” under the policy. To the contrary, the UM/UIM provision referenced by the Castilles serves only to define what constitutes an “uninsured motor vehicle!,]” and it does not eliminate what is set forth in the Insuring Agreement portion of the policy. That portion of the policy remains unmodified and, by its express terms, affords coverage for “a covered automobile” only if it is not “bobtailing.”
In conclusion, the Bobtail Liability Insurance Policy provides coverage for an accident' or loss arising from the use of a covered automobile if the tractor is not attached to a trailer. The definition of an uninsured motor vehicle under the UM/ UIM provisions of the policy does not modify or “change” this policy | ¡¡provision as proclaimed in the majority opinion. Thus, the policy’s Insuring Agreements’ general provision relative to bobtailing remains as written and governs the UM/ UIM provisions of the policy. Because Mr. Castille was operating a tractor with a trailer attached when the accident occurred, the claims of the Castilles do not come within the ambit of the policy’s UM/ UIM coverage, and Certain Underwriters is entitled to judgment as a matter of law.
I respectfully dissent from the majority opinion and would affirm the trial court judgment.